**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **TYRONE BOWDEN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No.:** |
| **vs.** | ) |
| | ) |
| **LINCOLN LIFE ASSURANCE** | ) |
| **COMPANY OF BOSTON** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**COMPLAINT**
**EMPLOYEE RETIREMENT INCOME SECURITY ACT**

COMES NOW Plaintiff Tyrone Bowden, by and through undersigned counsel, pursuant to the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §1001 *et. seq*., and for his cause of action against Defendant Lincoln Life Assurance Company of Boston, respectfully states the following:

## Introduction

1. Plaintiff Tyrone Bowden (hereinafter "Plaintiff" or "Mr. Bowden") brings this action, against Defendant Lincoln Life Assurance Company of Boston (hereinafter "Defendant" or "Lincoln") for damages caused by the Defendant's breach of statutory, contractual, and fiduciary obligations and violations of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et. seq.* ("ERISA").

2. Mr. Bowden seeks recovery and payment of benefits due under a healthcare benefits plan, statutory penalties, and costs and attorney's fees associated with this action, as provided by ERISA.

3. This is an action brought pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331. Under 29 U.S.C. §1132(f), the Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

4. Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2), in that the subject employee welfare benefit plan and employee insurance program are administered in this District, the breaches of duty herein alleged occurred in this District, and Defendant resides or are found in this district.

**Parties**

5. Mr. Bowden is an individual residing in the Eastern District of Missouri. He is a vested participant in a Group Insurance Policy for certain employees of BJC Health System d/b/a BJC HealthCare (hereinafter "BJC"), which provides an employee benefit plan within the meaning of 29 U.S.C. § 1132(a).

6. Mr. Bowden has standing to bring this action as a beneficiary under 29 U.S.C. §1132(a).

7. Lincoln provides health care coverage for certain employees of BJC under an employee welfare benefit plan (hereinafter "Plan") within the meaning of 29 U.S.C. § 1002. Specifically, Lincoln provides Long-Term Disability ("LTD") health insurance benefits.

8. Lincoln is an insurance company incorporated in Indiana and is doing business in Missouri under a license to do business as a Foreign Insurance Company.

9. Lincoln administers and pays benefits under the terms of the LTD plan and is a fiduciary within the meaning of 29 U.S.C. §1002(16),

10. BJC is a non-profit health care organization headquartered in Missouri.

11. BJC serves as the plan administrator and sponsor under the meaning of 29 U.S.C. § 1002(16).

**Facts**

12. Mr. Bowden is a veteran of the United States Marine Corp., having served from 1994 to 1998.

13. During his service, Mr. Bowden was assaulted and suffered a traumatic brain injury that resulted in back, shoulder, head, vision, hearing, and psychiatric problems which have persisted to the present day.

14. Mr. Bowden became disabled on December 11, 2019, due to bilateral shoulder pain, rotator cuff injury, chronic pain, and fibromyalgia.

15. At all relevant times, Mr. Bowden has been under the care of licensed medical doctors.

16. At the time of his disability, Mr. Bowden was employed as a Central Service Equipment tech for BJC.

17. Mr. Bowden's job includes making floor rounds twice per shift; picking up and delivering instruments and trays to nursing care areas; tracking check-in and check-out of equipment; ordering and delivering requested equipment and supplies to patient care units; and refilling supply cabinets as needed.

18. Lincoln has classified the physical demands of Mr. Bowden's job as "heavy."

19. Mr. Bowden's last day of work was December 10, 2019.

20. In a Nursing Memorandum dated March 18, 2020, Lincoln stated that Mr. Bowden had filed his LTD claim for bilateral shoulder pain.

21. In a subsequent Nursing Memorandum dated June 22, 2020, Lincoln stated that Mr. Bowden had a history of traumatic brain injury, migraines, PTSD, vertigo, depression, and rotator cuff injury, and he was experiencing all-over chronic pain and weakness in addition to anxiety and panic attacks.

22. On June 25, 2020, Lincoln approved Mr. Bowden's claim for LTD benefits.

23. Lincoln stated that Mr. Bowden had submitted his claim for an anxiety disorder and panic attacks.

24. Lincoln classified Mr. Bowden's condition as "Disability due to Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms," and was therefore subject to the following limitation:

> *"The benefit for Disability due to Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy."*

25. On April 9, 2021, Lincoln determined that Mr. Bowden's medical information did not support his inability to work, and therefore, Lincoln could no longer provide Mr. Bowden's LTD benefits.

26. In its denial of benefits, Lincoln relied primarily on an independent peer review by board-certified Psychiatrist Dr. Joel Kotin, who determined Mr. Bowden's records did not support psychiatric impairment and did not recommend any restrictions or limitations on Mr. Bowden's ability to work.

27. In making its initial denial, Lincoln did not obtain a peer review from a physician qualified to evaluate Mr. Bowden's physical impairments.

17. On September 20, 2021, Mr. Bowden sent an appeal of Lincoln's decision to Lincoln's Appeal Review Unit.

18. On November 8, 2021, Lincoln provided Mr. Bowden with an independent peer review by board-certified Physical Medicine and Rehabilitation physician Dr. Laura Deon, who determined that Mr. Bowden's reported pain was not consistent with his medical records and therefore his medical condition did not warrant restrictions or limitations.

19. On January 11, 2022, Mr. Bowden provided Lincoln with an Independent Medical Evaluation (IME) performed on December 7, 2021 by board-certified Internal Medicine physician Dr. Paul Hinton.

20. Dr. Hinton listed Mr. Bowden's diagnoses as follows:

a. Traumatic brain injury, neurocognitive disorder, and chronic migraines

b. Post traumatic stress disorder, anxiety, and panic disorder

c. Chronic lower back pan with L4-5 and L5-S1 bilateral facet osteoarthritis

d. Left shoulder partial tear involving the supraspinatus and infraspinatus with osteoarthritis of the acromioclavicular joint

e. Chronic pain and fibromyalgia

21. Dr. Hinton concluded that Mr. Bowden is functioning at a very poor level and his prognosis is guarded due to the length of time his symptoms have continued to progress since his injury.

22. Dr. Hinton concluded that Mr. Bowden's functional limitations are as follows:

a. The patient has an elevated risk for falling and needs to take appropriate precautions to reduce these chances including use of assistive devices

b. Avoid pushing and pulling

c. Avoid heavy lifting and strenuous activity

d. Due to his physical limitations, he is unable to stand, walk, lift/carry, reach, handle, bend/stoop, twist, squat, kneel, crawl, or climb

e. Due to balance issues, he should avoid climbing ladders or stairs, and walking on uneven terrain

f. Avoid any activity that exacerbates symptoms or is known to cause progression of the disease process

23. Dr. Hinton concluded that Mr. Bowden's significant pain levels, fall risk status, and multiple medications that cloud his sensorium prevent him from working in any full time or part time position and that Mr. Bowden would have difficulty maintaining any sort of employment, even if that employment were sedentary.

24. On February 11, 2022, Lincoln upheld its adverse determination regarding Mr. Bowden's LTD benefits.

25. In upholding its decision to deny Mr. Bowden's LTD benefits, Lincoln primarily relied upon a panel review completed by Dr. Cheryl Daves, a board-certified Doctor of Physical Medicine and Rehabilitation, and Dr. Shaul Saddick, a board-certified Doctor of Psychology and Neuropsychology, who both concluded that Mr. Bowden's records did not support sufficient impairment.

26. Dr. Daves limited her review to Mr. Bowden's physical medicine records, stating Mr. Bowden's behavioral health and neurologic diagnoses fell outside the scope of her review, while Dr. Saddick limited his review only to Mr. Bowden's neuropsychological concerns.

27. Lincoln concluded that Mr. Bowden is able to perform the duties of his occupation and was not disabled under the terms of the Plan.

28. Despite Lincoln's conclusion, Mr. Bowden continues to experience significant debilitating symptoms, which have resulted in Mr. Bowden requiring a walker or wheelchair to move around, and have left him unable to dress, groom, clean, cook, and toilet independently.

**COUNT I**
**Wrongful denial of Benefits pursuant 29 U.S.C. § 1132(a)(1)(b)**

29. Mr. Bowden is entitled to LTD benefits under the terms of the Plan, in that he is enrolled in BJC's Plan and, as a result of injury or sickness, he:

a. Has been unable to perform the material and substantial duties of his occupation for 24 months following his date of disability; and

b. Has been unable to perform, with reasonable continuity, the material and substantial duties of any occupation following that 24-month period.

30. Mr. Bowden has provided substantial medical evidence demonstrating that he has been continuously totally disabled under the terms of the Plan since December 11, 2019.

31. Despite the evidence that Mr. Bowden is disabled under the Plan, Lincoln has denied, and continues to deny, Mr. Bowden his LTD benefits.

32. As a result of Lincoln's wrongful denial of benefits, Mr. Bowden has been damaged in the amount of unpaid benefits.

33. Mr. Bowden has appealed the adverse benefit determination and exhausted all available administrative remedies.

34. Lincoln's denial of Mr. Bowden's LTD benefits was arbitrary and capricious, and not based on substantial evidence.

35. Lincoln is required to pay the benefits due under the terms of the Plan, together with prejudgment interest, attorney's fees, and costs.

**WHEREFORE,** Plaintiff Tyrone Bowden respectfully prays for judgment against Defendant Lincoln Life Assurance Company of Boston in the amount of unpaid past benefits, for an Order that Defendant begins future long-term disability and optional disability benefits payments to

Plaintiff under the terms of the Plan, for attorney's fees and costs, and for any other such relief as the court deems just and proper.

**COUNT II**
**BREACH OF FIDUCIARY DUTY PURSUANT TO 29 U.S.C. § 1132(a)(3)**

28. Mr. Bowden brings this claim against Lincoln under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits a participant to bring an action to enjoin any act or practice which violates ERISA or the terms of the plan or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the Plan.

29. Lincoln is a Plan Administrator under the plan.

30. As a Plan Administrator, Lincoln both decides a beneficiary's right to benefits and pays those benefits thereby Lincoln bears an inherent conflict of interest.

31. Section 29 U.S.C. § 1104 codifies the fiduciary duties that Lincoln as Plan administrator owes to beneficiaries like Mr. Bowden, they are the Duty of Loyalty and the Duty of Prudence.

32. The duty of loyalty requires the plan administrator to convey complete and accurate information material to the beneficiaries right to benefits under the plan

33. The duty of prudence requires the plan administrator to act as a reasonably prudent claims adjuster would in the circumstances.

34. ERISA § 503, 29 U.S.C. § 1133 requires that every employee benefit plan must:

a. provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant; and

b. afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

35. 29 C.F.R. § 2560.503-1 codifies the plan procedures that are required to be implemented in every ERISA governed plan in order to guarantee that Plan administrators fulfill their fiduciary duties and provide a full and fair review of all claims made under an ERISA governed plan.

36. Lincoln failed to adequately implement claims procedures that complied with 29 C.F.R. § 2560.503-1 and as a result, breached the dual fiduciary duties it owed Mr. Bowden.

37. Lincoln did not provide Mr. Bowden with a reasonably clear explanation of what standards and guidelines it was utilizing to determine that Mr. Bowden's records did not support the disabling physical impairments he continues to suffer.

38. Defendant Hartford breached the duty of loyalty by failing to adequately communicate with Mr. Slaughter the following information that it was required to relay:

a. Why Lincoln initially approved Mr. Bowden's LTD benefits only on the basis of his diagnoses for anxiety and panic disorder and disregarded his physical impairments.

b. What change in his medical condition or abilities resulted in Lincoln reversing its determination that benefits were appropriate.

c. Why independent medical reviewers and exams where necessary when Mr. Slaughter produced objective medical evidence that supported disability.

d. Why Lincoln believed Mr. Bowden's medical records did not support the severe and ongoing physical and mental impairments he was suffering.

e. What evidence Lincoln needed from Mr. Bowden for Lincoln to reverse its determination that he no longer met the definition of disability.

f. Why Lincoln's reliance upon information that it had previously used to determine that Mr. Bowden was disabled now constituted grounds to support a denial of benefits.

39. Defendant Lincoln breached the duty of Prudence by:

a. Failing to properly record Mr. Bowden's physical conditions as the basis for his LTD claim.

b. Failing to consistently apply the terms of the plan, in that it used evidence to determine that Mr. Bowden met the definition of disabled under the policy and only a year later used the same evidence to determine that Mr. Bowden no longer met that definition.

c. Failing to obtain sufficient peer-review opinions necessary to adequately review all the medical evidence available when making the determination that Mr. Bowden's LTD benefits should be denied.

d. Failing to evaluate the combined, inter-connected, and aggregate impact of Mr. Bowden's physical and psychological impairments when deciding Mr. Bowden's appeal.

e. Failing to consider the significant role that the Covid-19 pandemic played in disrupting Mr. Bowden's ability to obtain ongoing medical care for his conditions.

f. Failing to properly consider the heavy physical demands of Mr. Bowden's job when determining that Mr. Bowden's LTD benefits and his appeal should be denied.

40. The above breaches are the byproduct of a review process that is not compliant with 29 CFR § 2560.503-1, which results in an exacerbation of the inherent conflict of interest of Lincoln being both the decider and payer of benefits and permits Lincoln to routinely breach the fiduciary duties it owes to beneficiaries such as Mr. Bowden.

41. The breaches were also the byproduct of Lincoln's arbitrary and inconsistent interpretation of plan provisions that were made to the detriment of Mr. Bowden and in favor of Prudential and Prudential's financial interest in denying Mr. Bowden's claims.

42. As a result of Lincoln's breaches of the dual fiduciary duties of loyalty and rudence owed to Mr. Bowden under ERISA, Mr. Bowden suffered actual harm, as he was denied benefits to which he was entitled under the Plan, he incurred attorneys' fees and costs, and he suffered other financial losses.

43. Lincoln breached its fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, insofar as it failed to discharge its duties handling Mr. Bowden's benefits claim in a careful, skillful, and diligent manner.

**WHEREFORE**, Plaintiff Kenneth Bowden respectfully prays that this Court:

1) Grant judgment in his favor and against Defendant on all claims;
2) Order that Defendant pay restitution for all benefits that Mr. Bowden is entitled to but for the Prudential's breaches of fiduciary duties;
3) Declare Plaintiff's rights under the terms of the Plan, and clarify his rights to future benefits under the terms of the Plan;

4) Enjoin Defendant to provide a procedure for a full and fair review of adverse determinations under the Plan in accordance with 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1;
5) Enjoin Defendant to discharge its fiduciary duties in accordance with 29 U.S.C. § 1104;
6) Order restitution or surcharge to disgorge Defendant's unjust enrichment in wrongfully delaying and denying benefits and/or to make Plaintiff whole for losses, and payment of his attorneys' fees caused by Defendant's violation of 29 U.S.C. § 1133 and breach of fiduciary duty;
7) Order that Defendant pay the costs of suit, including Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and
8) Award all such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**GALLAGHER DAVIS, L.L.P.**

*/s/ Adam J. Olszeski*
Matthew R. Davis #MO58205
Adam J. Olszeski #MO66126
Gallagher Davis, LLP
2333 S. Hanley Road
St. Louis, MO 63144
(314) 725-1780
(314) 725-0101 Fax
matt@gallagherdavis.com
adam@gallagherdavis.com